HARTZ, Circuit Judge,
concurring:
I agree that U.S. Magnesium must be denied relief, but my reasons differ from those of the majority. In my view, U.S. Magnesium lacks standing because it has failed to make the necessary showing that its alleged injury would be redressed by a favorable decision.
My disagreement with the majority is not regarding the legal standard for redressability. As the majority opinion accurately states, when, as here, “ ‘the *1171 plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily substantially more difficult to establish.’ ” Op. at 1166 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Lujan explains that in this circumstance,
[t]he existence of ... standing .depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices ... will be made in such manner as to ... permit redressability of injury.
Lujan, 504 U.S. at 562, 112 S.Ct. 2130 (citations and internal quotation marks omitted). Thus, the majority opinion is correct when it states that to establish redressability, the plaintiff must show that “ ‘it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision,’ ” Op. at 1166 (quoting Lujan, 504 U.S. at 561, 112 S.Ct. 2130), and that “[w]hen redressibility depends on a third party and there is no evidence suggesting a likelihood that the third party will take the action necessary to afford the plaintiff relief, the plaintiff lacks standing.” Id.
Where I differ from the majority is in the application of these principles to the present case. US Magnesium’s purpose in this litigation is to prevent Utah from modifying its regulations regarding unavoidable breakdowns (the UBR regulations). US Magnesium hopes that a ruling by this court freeing Utah from the EPA requirement that it revise its regulations will cause Utah to halt its ongoing rule-revision proceedings and keep its present regulations. On the record before us, however, that possibility is merely speculation.
US Magnesium has failed “to adduce facts showing” that a favorable decision in this case will .lead Utah to abandon its proceedings to revise its UBR regulations. It fails to show Utah’s intent in that regard or any reason for Utah to halt the revision process. For intent, it relies on an affidavit it obtained from Bryce Byrd, director of the Utah Division of Air Quality. His predictions of how the state would respond to a favorable decision in this case would certainly be worthy of substantial weight. If the affidavit stated that Utah would likely abandon its revision proceedings, redressability would be established. But it does no such thing. It states: “[I]f this Court were to invalidate EPA’s SIP Call, there would be no need for UDAQ to revise the UBR and the existing UBR could be left in place.” Deck of Bryce C. Bird, ¶ 20 (Aplt./Pet’r’s Reply Br. at 38). This is not a statement of intent. All this sentence of the affidavit does is note the obvious legal effect of a ruling favorable to U.S. Magnesium. To say that “there would be no need” to revise the regulation does not tell us whether the state would halt its revision efforts. Indeed, the very fact that the affidavit does not assert the state’s intentions, when it would have substantially benefited U.S. Magnesium to have such an assertion, implies that the state is, at the very least, undecided on whether it would proceed with its revision proceedings. At most, as expressed by U.S. Magnesium at our oral argument, “We just don’t know for sure” — because “just like courts don’t issue advisory opinions, the agency’s not going to go as far as to completely play its hand about what it might do depending on how the remand will come down.” Oral Arg. at 9:35-9:47. I note, however, that I can see no reason why the state would npt want to play its hand publicly if it wished to abandon the revision process,- especially when a definitive statement would assist U.-S. Magnesium in its efforts to overturn the SIP Calk
*1172 Nor does the Byrd affidavit otherwise suggest that the state would halt its revision proceedings. True, the affidavit says that “UDAQ maintains its belief that EPA mandated that Utah revise or remove the UBR from the Utah SIP without adequate legal foundation and pursuant to a misinterpretation of the UBR.” Id. Significantly, however, the affidavit does not say that the state disagrees with the EPA regarding the substantive requirements of federal law (as opposed to the requirements for issuing an SIP Call). Rather, its position is that the EPA has misinterpreted the state’s regulations as contrary to federal law when they in fact are not. Although the state may have wished to make a point about the EPA’s power to issue a SIP Call, it is not clear why Utah would not now want to continue with the process of removing ambiguity from its regulations. In this regard, I find it significant that Utah did not itself pursue an appeal from the EPA decision. Of course, the decision may have been based in part on an assessment of how best to use limited legal resources; but an e-mail of Mr. Byrd attached to the EPA brief states that the decision not to appeal “was generally supported through information gained through the stakeholder process,” Aplee. /Resp’t Br., add. at 150, and stakeholders would be unlikely to concern themselves with allocation of agency legal resources.
Finally, U.S. Magnesium itself does not argue that the EPA is forcing Utah to make revisions to its rules that would be contrary to what is required by federal law. US Magnesium’s real complaint about the EPA is that no SIP Call was necessary, a complaint with which one could sympathize. But in supporting that complaint, U.S. Magnesium, particularly in its reply brief, repeatedly argues that the Utah regulations, if properly construed, are fully consistent with the EPA’s view of the requirements of federal law. See Aplt. /Pet’r’s Br. at 36-40; Aplt./Pet’r’s Reply Br. at 10-11, 16-22. That position was further echoed by U.S. Magnesium at oral argument (the most relevant portion of which is transcribed in a footnote at the end of this dissent). The only criticism of the EPA’s interpretation of federal law raised at oral argument was that the EPA’s interpretation of one aspect of federal law — an interpretation that concededly is entitled to Chevron deference — would not justify a SIP Call. See Oral Arg. at 12:49-13:31 (“Counsel: Within the context of the EPA interpreting the Clean Air Act you would give them Chevron deference in interpreting that. But that deference being applied in the instance of developing or approving a SIP is not the same as EPA saying it’s substantially inadequate. That’s a completely different standard. There’s room for inadequacy. But it’s got to be substantial before we’re going to go down this path, and spend our time, and force the state to change its rules that have existed for this many years. We’re going to pick real issues that have a real impact.”) See also Aplt./Pet’r’s Br. at 20 n. 5 (making similar point). It seems to me unlikely that Utah would halt its revision process if it agrees that the process will eliminate ambiguities and conform to undisputed federal law. In any event, U.S. Magnesium has not met its burden of showing that Utah would do so.
For these reasons, I cannot join the majority opinion.[1]

. Magnesium v. EPA, oral argument transcript, starting at 5:28:
Court: Let me approach this case from a different perspective. It’s not at all clear to me what this case is supposed to accom *1173 plish except maybe make a point. As I understand your briefing, your complaint is that the EPA wants to change the language in the SIP to make things perhaps more precise. And you’re saying those changes are unnecessary because the state regulations would be interpreted that way anyway — that the changes that EPA wants to impose really won’t accomplish anything. Am I correct?
Counsel: That’s correct, your honor. I think we’re really talking about—
Court: Why litigate that? What purpose is served when you’re complaining that they’re trying to remove ambiguity from state rules and to remove the ambiguity and make it clear that it means something which you say it already means? So you're upset at EPA: they wasted everybody’s time requiring clarification of something that didn’t need clarifying. But then you’re wasting everybody's time saying it shouldn’t be clarified, why are they doing this. It’s a pox on both your houses. Why bother the courts about this?
Counsel: Well, I wouldn’t go quite so far. From my client's perspective, it understands the state rule, it uses the state rule, and it does give it some protections. And including—
Court: So there are some changes you're saying? So these changes do make a difference?
Counsel: I don't think they’re going to—
Court: The EPA requirements for the rule language changes will effect a substantive change in the rule? I thought you were arguing to the contrary.
Counsel: I think there are some changes, but I don't think they're that material in terms of — -and here’s the key point — what the actual emissions will be on the ground. We’re talking about EPA’s burden. And there’s a principle at stake here, there’s no doubt about it. It’s not just this case. Because there are very few courts that have defined what it means to be substantially inadequate.
Court: Here’s one reason this is important: your standing. Because if Court: Here’s one reason this is important: your standing. Because if all this does is clarify what the Utah regulators thought it meant anyway, what makes you think that if you prevail here, Utah won’t change its regulations anyway, or maybe it already has (I’m not sure what the status is). Are you going to get any relief except a declaration of some legal principle?
Counsel: I think we get specific relief. EPA’s SIP call has forced Utah to go through a rulemaking to try to meet EPA’s demands.
Counsel: If this court vacates the rule, that has an immediate impact. And we have a declaration from Bryce Bird, the director of the Air Quality Division of Utah, that if this court says EPA has not met the threshold — ■ and again we’re talking about a statutory threshold — then Utah does not have to continue this process.
Court: What he says is Utah doesn't have to continue the process. It doesn’t say that we won’t decide to clarify the language, because they may think it's good to clarify the language.
Counsel: I think in fairness to him and his declaration, you’re right. Because just like courts don’t issue advisory opinions, the agency’s not going to go so far as to completely play its hand as to what it might do depending upon how the remand comes down. We just don’t know for sure. But we know that the state no longer has the pressure to do this; we know the state didn't want to do this and go through this effort. We know, frankly, EPA didn’t have it as a high priority — it was only forced to do so by a citizens' group. So from that perspective EPA did not see this as a big issue that it had to solve on the ground in Utah. And that’s the point. You’ve got to have a significant issue that's going to have some real effect on the ground.
Court: I agree. And that could be a problem with EPA taking the action. But now the ball’s in your court and you're also asking us to do something that's not going to have much of an effect. Somebody's got to put a stop to this nonsense, all this wasted effort. Seems to me one way to do that is to say that there’s no reason to see that you have standing here.
Counsel: I think there is standing, because but for EPA issuing this order and it told Utah what it has to do, and it’s got to change this rule — and that rule will change the way my client interacts with the rule and interacts with the agency and it has potential enforcement implications. I don’t think those are going to change, though, the actual emissions. In fact, it’s EPA's burden to prove that and that's what this case is about. If EPA can rely upon generic policy statements that could be ever-changing, then it could be messing with these SIPs and be forced to mess with these SIPs by NGOs, through this very action.
*1174 Court: But to make clear — I don’t want to belabor this too much — you don’t really disagree with that policy statement, do you?
Counsel: EPA's policy statement?
Court: The policy statement saying that even though you're excused because it's an unavoidable mishap that still there should be some discretion to enforce if it's one of the few sources of a pollutant that may exceed federal requirements, and that even if you do comply there still may be a right to bring an injunctive action either by EPA or by private citizens.
Counsel: I think there’s room within the Clean Air Act to have a reasonable interpretation on the other side of that. And if we’re talking about what is a reasonable interpretation, and there’s room to have both sides of that, that’s different than saying this plan is substantially inadequate. This ambiguity — of what the interpretation is and what the policy is — exists. It’s been discussed. It's been litigated. But that ambiguity does not cross the threshold of substantial inadequacy, your honor. That’s our position. That word has to mean something and it has to be significant before we're going to start down this path. We didn’t have to go down this path but here we are.
Court: They use their policy statements to determine the inadequacy, correct?
Counsel: Yes.
Court: And don’t we give their policy statements Chevron deference, or not?
Counsel: Within the context of EPA interpreting the Clean Air Act you would give them Chevron deference in interpreting that. However, that deference being applied in the instance of developing a SIP or approving a SIP is not the same as EPA saying it's substantially inadequate on the [unintelligible]. That’s a completely different standard. There’s room for inadequacy. It’s got to be substantial before we're going to go down this path, and spend our time, and force the state to change its rules that have existed for this many years. We’re going to pick real issues that are going to have a real impact.
(emphasis added)